FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 25 2025 ★
LONG ISLAND OFFICE

**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

WILLIAM KING MOSS III,

Plaintiff,

-- against --

THE BOARD OF EDUCATION OF THE BRENTWOOD UNION FREE SCHOOL DISTRICT, BRENTWOOD UNION FREE SCHOOL DISTRICT, AND BOTH INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, EILEEN FELIX, CYNTHIA CIFERRI, JULIA BURGOS, HASSAN AHMED, MARIA MALAVE, BRANDON GARCIA, EILEEN HARMON, RICHARD LOESCHNER, WANDA ORTIZ-RIVERA AND MEREDITH FORAKER,

Defendants.

---------------------------------------------------------------------X

Docket No.: ___________

**COMPLAINT**

**Jury Trial Demanded**

CV 25 4008

BULSARA, J.

LOCKE, M. J.

RECEIVED
JUL 25 2025
EDNY PRO SE OFFICE

TO THE SUPREME COURT OF THE STATE OF NEW YORK:

The Complaint of the Plaintiff, William King Moss III, PRO SE, respectfully complains of the Defendants The Board of Education of the Brentwood Union Free School District, Brentwood Union Free School District, and both individually and in their official capacities, Richard Loeschner, and Meredith Foraker and shows and alleges as follows:

## INTRODUCTION

1. This is an employment discrimination case, brought pursuant to the federal provisions of the Civil Rights Act of 1866, 42 U.S.C. §1981, ("Section 1981") under 42 U.S.C. §1983 ("Section 1983"); the First and Fourteenth Amendments under 42 U.S.C. §1983 ("Section 1983"); 42 U.S.C. §1985 ("Section 1985"), 42 U.S.C. §1986 ("Section 1986"), Title VI of the Civil Rights Act of 1964 ("Title VI") and Title VII of the Civil Rights Act of 1964 ("Title VII"), including all relevant amendments thereof, and various tortious acts

JUL 25 '25 PM4:24
REC'D IN PRO SE OFFICE

2. Specifically, Plaintiff William King Moss III (hereinafter also "Mr. Moss", "Plaintiff Moss", and "Plaintiff") alleges that the Defendants engaged in, and continue to engage in, a district-wide pattern and practice of employment discrimination, both intentional and systemic, on the basis of race, color, national origin and sex/gender against his application and similarly situated applicants seeking employment with Brentwood Union Free School District (hereinafter also "BUFSD" and the "District").

3. The Defendants' corrupt and unconstitutional protected-class discriminatory and non-protected-class discriminatory practices include, but are not limited to: employment discrimination on the grounds of race, color, national origin or sex/gender or any combination thereof, retaliation, denial of the right to the opportunity to obtain employment without discrimination because of race, color, national origin and sex/gender, denial of the right to consideration according a competitive examination of merit and fitness as far as practicable and a hope for employment, denial of the right to equal protection of the law, denial of due process liberty rights, and denial of the freedom of speech.

4. Plaintiff seeks equitable monetary and injunctive relief from these practices; compensatory and punitive damages; and an award of costs, expenses, consultant fees, expert witness fees, and attorney fees as well as any other award that a court deems just and proper.

**JURISDICTION & VENUE**

5. This Court has original jurisdiction over Plaintiff's Sections 1981, 1983, 1985(3), 1986 and Title VI claims, pursuant to 28 U.S.C. §§ 1331 and 1343.

6. The Court has original jurisdiction over Plaintiff's Title VII claims, pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §2000e-5(f)(3).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000-5(f)(3), because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the Eastern District of New York.

**THE PARTIES**

8. Plaintiff herein, William King Moss III, herein "Applicant Plaintiff", "Applicant", "Tax-payer Plaintiff", "Tax-Payer", "Mr. Moss", and the "Plaintiff", is a resident of the State of New York. Mr. Moss resides at 32 S 5th Ave, Brentwood, NY 11717.

9. The Plaintiff has worked in the Brentwood Union Free School District as a student worker, mathematics teacher and club advisor.

10. At all relevant times, the Plaintiff has been a former employee of the Brentwood Union Free School District.

11. The Plaintiff volunteered as a member of the Policy Committee for the Brentwood Union Free School District and has particular knowledge of the origins, intents, and meanings of school board policies 9110, 9220, and 9240 because he participated in their developments.

12. At all relevant times, the Plaintiff has been a former volunteer of the Brentwood Union Free School District.

13. Brentwood Union Free School District ("District") is a bonafide public school district in the State of New York, is located at % 52 Third Ave, Brentwood, NY 11717, is the Place of Meetings for the Board of Education and is the Place of Employment at which the individual employee defendants are employed.

14. The District is governed by a Board of Education composed of seven members elected by the District's eligible registered voters.

15. All of the captioned individuals named are being sued both personally/individually and in their capacities as district officers or employees, whichever applies.

16. Upon information and belief, the following work and home addresses pertain to the Board of Education of the Brentwood Union Free School District ("Board" and "Board of Education") and Brentwood Union Free School District: % Kathy Hoey, District Clerk, 52 Third Ave, Brentwood, NY 11717.

17. Upon information and belief, the following home address pertains to Eileen Felix: 205 Madison Ave, Brentwood, NY 11717 (home).

18. Upon information and belief, the following home address pertains to Cynthia Ciferri: 61 Morton Street, Brentwood, NY 11717 (home).

19. Upon information and belief, the following home address pertains to Julia Burgos: 1615 N. Thompson Dr, Bay Shore, NY 11706 (home).

20. Upon information and belief, the following home address pertains to Brandon Garcia: 22 Blacker St, Brentwood, NY 11717 (home).

21. Upon information and belief, the following home address pertains to Eileen Harmon: 1049 Martinstein Ave, Bay Shore, NY 11706 (home).

22. Upon information and belief, the following home address pertains to Hassan Ahmed: 1841 Peck Ave, Bay Shore, NY 11706 (home).

23. Upon information and belief, the following home address pertains to Maria Malave: 21 Ridgewood Ave, Brentwood, NY 11717 (home).

24. Upon information and belief, the following work and home addresses pertain to Richard Loeschner: 211 Brook St, Oakdale, NY 11769 (home), Felicio Administration Bldg, 52 Third Ave, Brentwood, NY 11717 (former work), .

25. Upon information and belief, the following work and home addresses pertain to Wanda Ortiz-Rivera: 50 Hopewell Dr., Stony Brook, NY 11790 (home) and Felicio Administration Bldg, 52 Third Ave, Brentwood, NY 11717 (work).

26. Upon information and belief, the following work and home addresses pertain to Meredith Foraker: 60 Bethany Drive, Commack, NY 11725 (home) and Brentwood High School, 1st St and S. 5th Ave, Brentwood, NY 11717 (work).

27. At all relevant times, respondent Brentwood Union Free School District has been a municipal corporation that purposes to "practice due diligence in finding the most qualified persons for any open positions" to educate public school students in Brentwood Union Free School District, Suffolk County, New York.

28. At all relevant times, the Brentwood Union Free School District ("District") was engaged in the business of maintaining a union free school district.

29. From July 2017 to September 30, 2023, the Superintendent of Schools in the Brentwood Union Free School District was Richard Loescher ("Mr. Loeschner" and "the Superintendent").

30. For all relevant times on and before September 30, 2023, Wanda Ortiz-Rivera was an Assistant Superintendent in the Brentwood Union Free School District.

31. For all relevant times on and after October 1, 2023, the Interim Superintendent of Schools in the Brentwood Union Free School District was Wanda Ortiz-Rivera ("Ms. Ortiz-Rivera" and "the Interim Superintendent").

32. At the time of the appointment of Meredith Foraker the following persons were trustees of the Brentwood Union Free School District: Eileen Felix, Cynthia Ciferri, Julia Burgos, Hassan Ahmed, Maria Malave, Brandon Garcia, and Eileen Harmon.

33. At all relevant times, Meredith Foraker is the person appointed to serve as the Brentwood Union Free School District's High School Department Head of English as a New Language Instruction and Bilingual Content Area Instruction ("Department Head") position advertised in the District's June 28, 2023 "Department Head of English as a New Language Instruction and Bilingual Content Area Instruction" job posting on OLAS.

**ADMINISTRATIVE PROCEDURES**

34. The Defendant Superintendent and Board recommended and appointed Meredith Foraker to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position on November 16, 2023. See Exhibit A - November 16, 2023 Board of Education Minutes. See Exhibit A - November 16, 2023 Board of Education Minutes.

35. September 9, 2024 is 298 days from November 16, 2023, the date of appointment.

36. Employment discrimination claims accrue on the date when an adverse employment determination has been both made *and* communicated to the plaintiff.

37. The District communicated to the Plaintiff that his application and candidacy for the Department Head position for which he applied was rejected on April 5, 2024. See Exhibit B - April 5, 2024 Email Thread

38. September 9, 2024 is 157 days from April 5, 2024, the date rejection was first communicated to the Plaintiff.

39. The Plaintiff submitted a timely charge of discrimination and retaliation to the Equal Employment Opportunity Commission on September 9, 2024. See Exhibit C - September 9, 2024 EEOC Email Thread and Charge.

40. The Plaintiff was issued a right to sue letter from the EEOC on April 29, 2025. See Exhibit D - April 29, 2025 Right to Sue Letter

41. The Plaintiff timely filed this Complaint on July 25, 2025, 87 days after April 29, 2025.

42. The Plaintiff, by offering a preponderance of allegations and evidence, does not in any way set a course for summary judgment.

43. The Plaintiff, by offering a preponderance of allegations and evidence, sets forth an unusually large amount of smoke for a civil service hiring context and demands the Court permit the discovery of fire.

44. The Plaintiff, by offering proof of state constitutional violations, does not bring state causes of action, but does so to support the fact that the defendants violated federal law, especially freedom of speech, equal protections and due process.

45. The Plaintiff, by offering proof of some New York State Human Rights Statutes, does not bring state causes of action, but does so to support federal law §1988 regarding interstices.

46. To the extent that this Complaint appears to bring state causes of action, the Plaintiff requests that the Court decline supplemental jurisdiction.

**SUMMARY OF CLAIMS**

47. For each and every paragraph and title in this Complaint, the term "participate in" also means "successfully aid, abet, incite, compel or coerce"; the terms "participation in" and "participating in" also mean "successfully aiding, abetting, inciting, compelling or

coercing"; the term "attempt to participate in" also means "unsuccessfully attempt to aid, abet, incite, compel or coerce", and the term "attempting to participate in" also means "unsuccessfully attempting to aid, abet, incite, compel or coerce".

**Related Solely to Race, Color, National Origin or Sex Discrimination**

48. Failure to Hire, discrimination based on race, color, national origin, and sex and/or any combination thereof. (A Disparate/Substandard Treatment)

49. Failure to Hire, participation in discrimination based on race, color, national origin, and sex and/or any combination thereof, or, in the alternative, attempting to participate in said discrimination. (A Disparate/Substandard Treatment)

50. Deprivation of Employment Opportunity, discrimination based on race, color, national origin, and sex and/or any combination thereof. (A Disparate/Substandard Treatment)

51. Deprivation of Employment Opportunity, participation in discrimination based on race, color, national origin, and sex and/or any combination thereof, or, in the alternative, attempting to participate in said discrimination. (A Disparate/Substandard Treatment)

52. Alteration of Examination Results, discrimination based on race, color, national origin, and sex and/or any combination thereof. (A Disparate/Substandard Treatment)

53. Alteration of Examination Results, participation in discrimination based on race, color, national origin, and sex and/or any combination thereof, or, in the alternative, attempting to participate in said discrimination. (A Disparate/Substandard Treatment)

54. Retaliation, discrimination based on previous complaints or support of previous complaints about discrimination based on race, color, national origin, and sex or a combination thereof.

55. Participation in retaliation, discrimination based on previous complaints or support of previous complaints about discrimination based on race, color, national origin, and sex or a combination thereof, or, in the alternative, attempting to participate in said retaliation.

56. Hostile Work Environment, a workplace where an employee is subjected to discrimination, harassment, or retaliation that creates an abusive working relationship and/or impedes performance.

57. Participation in a hostile work environment, a workplace where an employee is subjected to discrimination, harassment, or retaliation that creates an abusive working relationship and/or impedes performance, or, in the alternative, attempting to participate in said hostile work environment.

**Not Related Solely to Race, Color, National Origin or Sex Discrimination**

58. Violation of Plaintiff's liberty rights to consideration according to a competitive examination of merit and fitness as far as practicable and a hope for appointment.

59. Violation of Plaintiff's due process liberty right to a formal hearing before being denied consideration according to a competitive examination of merit and fitness as far as practicable and a hope for appointment.

60. Violations of Plaintiff's right to equal protection of the law.

61. Retaliation, discrimination based on previous complaints about improper governmental actions or unlawful actions.

62. Unconstitutional usage of District funds, including federal funds allotted to said district.

63. Breach of contract.

64. Breaches of duty.

65. Conspiracy to interfere with civil rights.

66. Failure to prevent conspiracy to interfere with civil rights.

## FACTS

### Not Related Solely to Race, Color, National Origin or Sex Discrimination

67. Classroom teachers and school administrators in public schools have academic power in public schools because they determine curriculum for instruction and record/file grades for students.

68. Public school administrators have spending power and supervisory power in public schools because they approve the spending of district funds and because they evaluate and discipline employee and student performance.

69. School District Leaders are public school administrators that conduct school business districtwide, not solely in a particular school building.

70. School Building Leaders are public school administrators that conduct school business in an elementary or secondary school building and not districtwide.

71. Examinations of merit and fitness account for the paper qualifications and/or experience of an applicant required for a position and/or assess the abilities, skills, knowledge, ethics and/or discernment necessary to successfully operate in the position.

72. Any recruitment or hiring practice that does not account for the paper qualifications and/or experience of an applicant or assess an applicant's abilities, skills, knowledge, ethics and/or discernment is not an examination.

73. It was practicable, at all relevant times, to base selections for advancements and appointments for the Department Head position on examinations of merit and fitness only.

74. Competitive examinations compare the results of the examinations of applicants and select those with higher results than others for advancement or appointment.

75. Examinations that do not select those with higher results than others for advancement or appointment are not competitive.

76. It was practicable, at all relevant times, to base selections for advancements and appointments for the Department Head position on competitive examination results only.

77. In New York State, Article V, Section 6 of the Constitution of the State of New York combined with New York State Education Law logically and strictly requires the following procedures for the hiring of certificated personnel in public schools:

A. Recruitment of Persons leading to the Screening of Applications

B. Screening of Applications leading to Consideration of Qualified Applicants Only

C. Consideration leading to Advancement

D. Advancement leading to Superintendent's Recommendation

E. Superintendent's Recommendation leading to Board Approval

F. Board Approval leading to Appointment

78. The On Line Application System (hereinafter also OLAS) is a website, namely olasjobs.org, on which school employers publish job postings/advertisements and receive applications to said job postings/advertisements.

79. The Brentwood Union Free School District published a posting for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction probationary "10.5-month work year" administrative position on OLAS on June 28, 2023 with a closing date/application deadline of July 13, 2023, a period of 15 days and 10

school days. See Exhibit E - First Job Posting for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

80. Mr. Moss applied, on-time, to the June 28, 2023 posting on OLAS by applying on July 4, 2023. See Exhibit F - Proof of Moss Application on OLAS.

81. Upon information and belief, the District did not consider the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction probationary position posted on June 28, 2023.

82. Upon information and belief, Richard Loeschner directed Wanda Ortiz-Rivera not to consider the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction probationary position posted on June 28, 2023.

83. Upon information and belief, Richard Loeschner directed Wanda Ortiz-Rivera not to interview the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction probationary position posted on June 28, 2023.

84. Upon information and belief, Richard Loeschner directed an administrator not to consider the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction probationary position posted on June 28, 2023.

85. Upon information and belief, Richard Loeschner directed an administrator not to interview the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction probationary position posted on June 28, 2023.

86. At all relevant times before September 30, 2023, Betty Greene served as the District's Diversity, Equity and Compliance Consultant.

87. Upon information and belief, Betty Greene rated the applicants for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction probationary position posted on June 28, 2023.

88. Upon information and belief, Betty Greene utilized a Rubric for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position similar to that of the Assistant Principal position posted the same day to conduct the District's examination of applications in July 2023 ("Application Rubric"). See Exhibit G - Application Rubric for Secondary Assistant Principal.

89. Upon information and belief, the Application Rubric contained the following items rated from one number to the next or labeled as follows, see Exhibit G - Application Rubric for Secondary Assistant Principal:

A. Elementary Teaching Experience rated from 0 to 1.

B. Secondary Teaching Experience rated from 0 to 1.

C. Content area labeled with the subject area.

D. Teaching in Brentwood rated from 0 to 1.

E. Number of Teaching Years rated from 0 to 1.

F. Spanish Speaking rated from 0 to 2.

G. Department Head and/or Administrative Experience rated from 0 to 2.

H. Brentwood grad and/or Community rated from 0 to 2.

I. Prior experience working in a district similar to Brentwood rated from 0 to 1.

J. Internal Candidate rated from 0 to 1.

K. Quality and Content of Candidate's Cover Letter rated from 0 to 1.

L. TOTAL rated from 0 to 13 points.

90. Upon information and belief, Meredith Foraker did not apply for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction probationary position posted on June 28, 2023.

91. The District reposted for the Department Head position on August 29, 2023 for a period of five (5) school days until September 5, 2023, over Labor Day Weekend. See Exhibit H - Second Job Posting for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

92. Posting for a position for five (5) school days over Labor Day Weekend greatly reduces the number of applicants.

93. Posting for a position for five (5) school days over Labor Day Weekend did not permit the Plaintiff with enough time to notice the posting and reapply.

94. In this case, the Plaintiff does not need to reapply to be considered a bona fide applicant for the position.

95. McDonnell-Douglass held that the fourth prong of a prima facie case of discrimination is met when the employer rejects the Plaintiff and "thereafter the employer continued to seek applicants with complainant's qualifications".

96. Upon information and belief, the District reposted for the Department Head position on August 29, 2023 in order to increase the number of qualified applicants.

97. Upon information and belief, Meredith Foraker applied to the reposting of the Department Head position.

98. Upon information and belief, Meredith Foraker was recruited by the District to apply for the Department Head position after the Plaintiff applied for the Department Head position.

99. Upon information and belief, Meredith Foraker was recruited by the District to apply for the Department Head position after the Plaintiff applied for the Department Head position because of race, color, national origin, sex, and retaliation based biases.

100. Upon information and belief, the District solicited at least one person to apply for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position after the Plaintiff applied for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

101. Upon information and belief, the District solicited at least one person to apply for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position after the Plaintiff applied for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of race, color, national origin, sex, and retaliation based biases.

102. Upon information and belief, the District solicited at least one person to apply for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of discriminatory preference for and/or intent to hire members of the White race and/or White color classes.

103. Upon information and belief, the District solicited at least one person to apply for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position after the Plaintiff applied for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of discriminatory animus and/or intent against members of the Black race and/or Black color classes.

104. Upon information and belief, the District solicited at least one person to apply for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position after the Plaintiff applied for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of retaliatory animus and/or intent.

105. Upon information and belief, Meredith Foraker did not possess elementary teaching experience before July 2023.

106. Meredith Foraker possessed secondary teaching experience before July 2023.

107. Meredith Foraker possessed English (ELA) and English as a New Language (ESOL) certifications before July 2023.

108. Upon information and belief, Meredith Foraker did not possess any years of experience teaching in Brentwood before July 2023.

109. Meredith Foraker possessed years of teaching experience in Baldwin Union Free School District before July 2023.

110. Upon information and belief, Meredith Foraker was not Spanish speaking before July 2023.

111. Meredith Foraker had zero (0) years of administrative experience before July 2023.

112. Meredith Foraker had less than six (6) months of certification as a school building leader before July 2023.

113. Upon information and belief, Meredith Foraker was not a graduate of the Brentwood Union Free School District before July 2023.

114. Upon information and belief, Meredith Foraker was not a resident of the Brentwood Union Free School District between June 28, 2023 and November 16, 2023.

115. Upon information and belief, Meredith Foraker was not considered an internal candidate between June 28, 2023 and November 16, 2023.

116. Upon information and belief, Meredith Foraker submitted a cover letter on or before November 16, 2023 for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

117. Upon information and belief, Betty Greene scored Meredith Foraker as follows:

A. Elementary Teaching Experience: 0 points.

B. Secondary Teaching Experience: 1 point.

C. Content area labeled with the subject area: "English" and "ENL".

D. Teaching in Brentwood: 0 points.

E. Number of Teaching Years: 1 point

F. Spanish Speaking: 0 points.

G. Department Head and/or Administrative Experience: 0 points.

H. Brentwood grad and/or Community: 0 points.

I. Prior experience working in a district similar to Brentwood: 1 point.

J. Internal Candidate: 0 points.

K. Quality and Content of Candidate's Cover Letter: 1 point.

L. TOTAL: 4 points

118. The Plaintiff had elementary teaching experience before July 2023.

119. The Plaintiff had secondary teaching experience before July 2023.

120. Upon information and belief, Betty Greene credited the Plaintiff with a Content Area of Bilingual Education, Math or Bilingual Math before July 2023.

121. The Plaintiff taught in the Brentwood Union Free School District before July 2023 for 11 years.

122. The Plaintiff had more than 15 years of teaching experience before July 2023.

123. The Plaintiff was Spanish speaking before July 2023.

124. The Plaintiff had 12 years of Department Head or administrative experience before July 2023.

125. The Plaintiff graduated from the Brentwood Union Free School District before July 2023, specifically in 1995.

126. The Plaintiff was a resident of the Brentwood Union Free School District between June 28, 2023 and November 16, 2023.

127. The Plaintiff had prior experience working in a district similar to Brentwood Union Free School District before July 2023, namely Brentwood Union Free School District and Lawrence Union Free School District.

128. Although a former employee, upon information and belief, the Plaintiff was not considered an internal candidate between June 28, 2023 and November 16, 2023.

129. Upon information and belief, the District rated the Plaintiff's cover letter with 1 point.

130. Upon information and belief, Betty Greene scored the Plaintiff as follows:

A. Elementary Teaching Experience: 1 point.

B. Secondary Teaching Experience: 1 point.

C. Content area labeled with the subject area: "Mathematics" and "Bilingual Education".

D. Teaching in Brentwood: 1 point.

E. Number of Teaching Years: 1 point.

F. Spanish Speaking: 2 points.

G. Department Head and/or Administrative Experience: 2 points.

H. Brentwood grad and/or Community: 2 points.

I. Prior experience working in a district similar to Brentwood: 1 point.

J. Internal Candidate: 0 points.

K. Quality and Content of Candidate's Cover Letter: 0 points or 1 point.

L. TOTAL: 11 or 12 points

131. Upon information and belief, if the District did not receive Plaintiff's cover letter or otherwise did not score it 1 point, the Plaintiff's total rating according to the Application Rubric was at least 11.

132. Upon information and belief, if the District scored Plaintiff's cover letter with 1 point, the Plaintiff's total rating according to the Application Rubric was at least 12.

133. Upon information and belief, the Plaintiff's rating on the Application Rubric was higher than Meredith Foraker's rating by 7 or 8 points.

134. A score of 11, 12 or 13, placed the Plaintiff within the top 3 scores of the application/resume review test.

135. Upon information and belief the Plaintiff placed within the top 3 candidates on the Resume Review Test scored by Betty Greene in July 2023.

136. Upon information and belief the Plaintiff placed within the top 2 candidates on the Resume Review Test scored by Betty Greene in July 2023.

137. Upon information and belief, the Plaintiff placed first on the Resume Review Test scored by Betty Greene in July 2023.

138. Upon information and belief, Meredith Foraker's score placed her outside of the top 3 applicants scored according to the Application Rubric.

139. Upon information and belief, Meredith Foraker's score placed her outside of the top 3 scoring levels according to the Application Rubric.

140. Meredith Foraker was advanced beyond the initial application resume review round/test to the interview round/test for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

141. The Plaintiff was not advanced beyond the initial resume review round/test to the interview round/test for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

142. Upon information and belief, Meredith Foraker was writing sample tested for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

143. The Plaintiff was not writing sample tested for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

144. The Plaintiff was not examined for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position after the District's initial screening for minimal qualification.

145. The Plaintiff was not *competitively* examined for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because his top 3 rating-level score on the Application Rubric did not competitively advance his application toward appointment.

146. Upon information and belief, the Plaintiff's application was not *competitively* examined according to merit and fitness as far as practicable.

147. The District did not examine any of the Plaintiff's pertinent abilities, skills, knowledge, ethics or discernment for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position beyond his application.

148. The Plaintiff was qualified for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position according to his application.

149. The District did not *competitively* examine the Plaintiff's application and resume for his merit and fitness as far as practicable.

150. The District did not *competitively* examine the Plaintiff's merit and fitness as far as practicable beyond his application.

151. Upon information and belief, the District did not maintain a record of the Application Rubric initial examination of qualification capable of being reviewed by a court.

152. Upon information and belief, the District made selections for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position from a pool of applicants who were not qualified for said position after the Application Rubric stage.

153. At all relevant times, the District's school board policy 9240 included:

> "For the purposes of this policy, all applicants/candidates for employment, including but not limited to, teaching, building level administrative, and central administrative positions, deemed by the Superintendent of Schools, with the assistance of the Office of Human Resources, to have met the minimal qualifications for the position during the initial application screening process (before interviews) will be eligible to proceed as "qualified" applicants/candidates during the interview process. The decision as to whether to interview the qualified applicant/candidate shall be within the discretion of the District's administration."

154. Upon information and belief, Betty Greene found the Plaintiff to have met the minimal qualifications for the position during the initial application screening process for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

155. Upon information and belief, Richard Loeschner found the Plaintiff to have met the minimal qualifications for the position during the initial application screening process for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

156. Upon information and belief, a District administrator found the Plaintiff to have met the minimal qualifications for the position during the initial application screening process for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

157. The Plaintiff was eligible to proceed as a "qualified" applicant/candidate during the interview process for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

158. In the alternative, upon information and belief, no District agent considered the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

159. It is generally known to District employees, especially central office employees, that the Plaintiff annually supports candidates for the Brentwood Board of Education.

160. Each year, since 2003, except 2007, the Plaintiff has supported candidates that are not endorsed by the Brentwood Teachers Association.

161. In May 2023, the Plaintiff openly supported two (2) candidates for the Brentwood Board of Education that were not the candidates supported by the Brentwood Teachers Association.

162. At all relevant times, the seven (7) trustees of the Brentwood Board of Education were candidates who won their positions in opposition to the candidates opposed by the Plaintiff.

163. Upon information and belief, some or all of the seven (7) trustees of the Brentwood Board of Education did not want to consider the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because he opposed their candidacy for their trustee seats.

164. Upon information and belief, some or all of the seven (7) trustees of the Brentwood Board of Education expressed that they do not want to consider the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position to Richard Loeschner prior to his being rejected for the position.

165. Upon information and belief, one, some or all of the seven (7) trustees of the Brentwood Board of Education expressed that they do not want to consider the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position to Richard Loeschner prior to his being rejected for the position.

166. Upon information and belief, one, some or all of the seven (7) trustees of the Brentwood Board of Education expressed that they do not want to consider the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position to a District administrator prior to his being rejected for the position.

167. The Trustee defendants each voted to appoint Meredith Foraker to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position thereby participating in the unconstitutional appointment.

168. To the extent that no primary violation against the Brentwood Union Free School District and its Board of Education is found, each individual trustee and employee defendant is liable for their every unsuccessful attempt to violate the law NY Constitution 1§11, NY Constitution 5§6, NY Constitution 1§6, New York State Civil Rights Law, New York State Civil Service Law, New York State Human Rights Law and New York State Labor Law.

169. On November 16, 2023, the Interim Superintendent Wanda Ortiz-Rivera recommended Meredith Foraker to be appointed as Department Head of English as a New Language Instruction and Bilingual Content Area Instruction for a four (4) year probationary period effective December 18, 2023 through December 17, 2027.

170. On November 16, 2023, the Board of Education voted 7-0-0 to appoint Meredith Foraker as Department Head of English as a New Language Instruction and Bilingual Content Area Instruction for a four (4) year probationary period effective December 18, 2023 through December 17, 2027.

171. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "For the purposes of this policy, all applicants/candidates for employment, including but not limited to, teaching, building level administrative, and central administrative positions, deemed by the Superintendent of Schools, with the assistance of the Office of Human Resources, to have met the minimal qualifications for the position during the initial application screening process (before interviews) will be

eligible to proceed as "qualified" applicants/candidates during the interview process. The decision as to whether to interview the qualified applicant/candidate shall be within the discretion of the District's administration."

172. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "Job postings will be advertised by the District's Human Resources Department as far in advance as possible in an effort to ensure the District has a large, qualified and diverse applicant pool. All postings must be open for a minimum two-week period (14 days) within ninety-days (90) prior to appointment."

173. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "Furthermore, the Superintendent, or his/her designee, must make a reasonable effort to interview qualified applicants, in conformance with protocols set forth in this policy and applicable collective bargaining agreements, who submit a resume in accordance with the procedures set forth in the job posting."

174. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "Recruiting and hiring shall be on the basis of individual qualification."

175. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "The Board and its employees shall adhere to the practice of recruiting and hiring personnel without regard to age, color, creed, disability, marital status, national origin, race, religion, sex or any other status protected by federal or New York State law."

176. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "The Board will practice due diligence in finding the most qualified persons for any open positions."

177. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "The District strives to recruit qualified, diverse candidates using wide-ranging and creative techniques for any open positions to be filled in accordance with the Education Law, Civil Service Law, Suffolk County Civil Service Rules, and any applicable provisions contained in the District's collective bargaining agreements with its employees' unions."

178. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "The Brentwood School District shall comply with all the requirements of the Education and Civil Service Laws, including any fingerprinting requirements. (See Policies #9220 and #9260)" and "The District will comply with all the requirements of the Education and Civil Service laws in its hiring practices, including any fingerprinting requirements."

179. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "Selection of employees is made pursuant to the District's standard screening process, interview process, reference check process, collective bargaining agreements, Education Law, Civil Service Laws, and other legal requirements. The selection process shall include a preference for District residents where candidates' skills, experience, and criteria used in the selection process are equivalent as deemed by the Superintendent and Board of Education."

180. The District's School Board Policy #9240 Recruitment and Hiring Employees at all relevant times stated "Additionally, the Superintendent of Schools, or his/her designee, will review all resumes received by the District and certify, in writing, to the Board of Education that all applicants who are recommended by the Superintendent or his/her designee to the Board of Education meet all of the pre-requisite certifications and/or conditions, and are fully qualified candidates."

181. NY Constitution 5§6 requires that examination results must be documented such that they are capable of being reviewed.

182. Upon information and belief, the District conducted a non-competitive "initial application screening process".

183. Upon information and belief, the District conducted an interview process without any ratings or records capable of being reviewed.

184. The Defendants did not give the Plaintiff any hope for appointment or employment in the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

185. The Plaintiff shows a plausible prima facie case of NY Constitution 5§6 violations because:

A. The Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position is plausibly a civil service position as a certificated position within a New York public school district.

B. The Plaintiff plausibly applied for the position and was qualified for the position.

C. The Plaintiff plausibly suffered adverse employment action in that, though qualified, (1) he was denied employment opportunity in the form of an earned interview, (2) he was not competitively considered for the position nor given a hope for employment, (3) he was not hired to be the position.

D. A plausible inference of NY Constitution 5§6 violation can be drawn from the factual allegations that the Plaintiff plausibly suffered adverse employment action because (i) an examination was not competitive as far as practicable, where the Plaintiff a qualified applicant was not examined, and (ii) the District did not adhere to its own applicable regulatory selection procedures leading to the assignment or appointment of a civil servant, where it violated school board policy 9240

186. The Plaintiff shows a plausible prima facie case of NY Constitution 1§6 violation under NY Constitution 1§11 violation (first sentence) and Civil Rights Law §40-c.1 and §40-d because:

A. The Plaintiff plausibly applied for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position and was qualified for the position.

B. NY Constitution 5§6 plausibly entitled the Plaintiff, as a bona fide Department Head of English as a New Language Instruction and Bilingual Content Area Instruction applicant, to consideration according to a competitive examination of merit and fitness as far as practicable and a hope for appointment.

C. The Plaintiff plausibly suffered a denial of his due process liberty right to consideration according to a competitive examination of merit and fitness as far as practicable and a hope for appointment.

D. A plausible inference of NY Constitution 1§6 violation under NY Constitution 1§11 violation (first sentence) can be drawn from the factual allegations that the Plaintiff plausibly suffered a denial of his due process liberty right because (1) he was denied employment opportunity without a noticed hearing, (2) he was not considered for the position nor given a hope for employment without a noticed hearing, (3) he was denied participation in every competitive examination of merit and fitness as far as practicable for position without a noticed hearing, (4) he was not appointed to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position without a noticed hearing, (5) the Plaintiff was not examined at any hearing of his merit and fitness before being rejected or not considered at all, and (6) other applicants were appointed, not appointed, further examined, or not further examined for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position *after a hearing of their merit and fitness*, making the Plaintiff's examination practicable.

187. The Plaintiff shows a plausible prima facie case of School Board Policy 9240 and 9110 violations under NY Constitution 1§11 violation (first sentence) and Civil Rights Law §40-c.1 and §40-d because:

A. The Plaintiff, plausibly a former district employee, plausibly applied for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position and was qualified for the position.

B. School Board Policy 9240 plausibly entitled the Plaintiff, as a bona fide Department Head of English as a New Language Instruction and Bilingual Content Area Instruction applicant, to (1) be eligible to proceed as "qualified" applicants/candidates during the interview process having met the minimal qualifications for the position during the initial application screening process (before interviews), (2) hiring on the basis of individual qualification, and School Board Policy 9110 plausibly entitled the Plaintiff, as a bona fide Department Head of English as a New Language Instruction and Bilingual Content Area Instruction applicant, to (3) full consideration and evaluated on the basis of education, experience and ability, to determine fitness to perform the duties of the position, and (4) not suffer any adverse action, or be granted any benefit, for any reason other than personal merit or conduct, or in violation of any law or regulation.

C. The Plaintiff plausibly suffered a denial of all four of the entitlements.

D. A plausible inference of School Board Policy 9240 and 9110 violations under NY Constitution 1§11 violation (first sentence) can be drawn from the factual allegations that the Plaintiff plausibly suffered a denial of his school board policy entitlements because (1) the District plausibly denied the Plaintiff at least one of the four entitlements, and (2) the District plausibly did not equally deny other qualified applicants the same entitlement(s) and (3) the District

plausibly did not equally deny every unqualified applicant (according the minimal requirements and additional requirement in the job posting) the same entitlement(s).

The Brentwood Union Free School District's Culture of Corruption

188. The District, its Board of Education and its trustees have consistently permitted the violation of Board of Education policy, state labor, civil rights and human rights law, especially as they pertain to Black/African-American applicant-employees and employees.

189. The District, its Board of Education and its trustees did not train all of the supervisors involved in the hiring of the Department Head position in the laws and rules for hiring unclassified civil servants.

190. The District, its Board of Education and its trustees did not train all of the recruiters involved in the hiring of the Department Head position in the laws and rules for hiring unclassified civil servants.

191. The District, its Board of Education and its trustees did not train all of the hiring process examiners involved in the hiring of the Department Head position in the laws and rules for hiring unclassified civil servants.

192. The District, its Board of Education and its trustees did not train all of their supervisors in the avoidance of conflicts of interest.

193. The District, its Board of Education and its trustees did not train all of their recruiters in the avoidance of conflicts of interest.

194. The District, its Board of Education and its trustees did not train all of their hiring process examiners in the avoidance of conflicts of interest.

195. Upon information and belief, the District, its Board of Education and its trustees do not approve the examinations utilized for hiring certificated personnel.

196. The District, its Board of Education and its trustees do not approve the examinations utilized for hiring certificated personnel.

197. The District, its Board of Education and its trustees did not protect against race, color, national origin or sex based decisions by requiring that the supervisors involved in the hiring of the Department Head position agree to refrain from those decisions.

198. The District, its Board of Education and its trustees did not protect against race, color, national origin or sex based decisions by requiring that the recruiters involved in the hiring of the Department Head position agree to refrain from those decisions.

199. The District, its Board of Education and its trustees did not protect against race, color, national origin or sex based decisions by requiring that the hiring process examiners involved in the hiring of the Department Head position agree to refrain from those decisions.

200. The District, its Board of Education and its trustees did not protect against retaliatory decisions by requiring that the supervisors involved in the hiring of the Department Head position agree to refrain from those decisions.

201. The District, its Board of Education and its trustees did not protect against retaliatory decisions by requiring that the recruiters involved in the hiring of the Department Head position agree to refrain from those decisions.

202. The District, its Board of Education and its trustees did not protect against retaliatory decisions by requiring that the hiring process examiners involved in the hiring of the Department Head position agree to refrain from those decisions.

203. The District, its Board of Education and its trustees have not conducted an audit of the human resources department even though they have received several complaints of race and color based discrimination since January 2018.

204. The District, its Board of Education and its trustees have not required the documentation of all examination results, including rankings, for hiring processes even though they have received several complaints of race and color based discrimination since January 2018.

205. The District, its Board of Education and its trustees have not required Board approval of hiring criteria even though they have received several complaints of race and color based discrimination since January 2018.

206. In May 2025, the District, its Board of Education and its trustees eliminated the Board policy that guaranteed that, when qualifications are equivalent, the District resident gets the job, a move that mathematically negatively affects people of color.

207. The District, its Board of Education and its trustees, having knowledge of employees he is suing in a court of law for race and color based discrimination, have permitted some of those employees to interview the Plaintiff for vacant positions.

208. In May 2025, the District, its Board of Education and its trustees eliminated the Board policy that guaranteed that when qualifications are equivalent the District resident gets the job, a move that mathematically negatively affects people of color.

**Related Solely to Race, Color, National Origin or Sex Discrimination**

209. At all relevant times that Brentwood Union Free School District and Richard Loeschner knew the Plaintiff's race as being Black.

210. At all relevant times that Brentwood Union Free School District and Richard Loeschner knew the Plaintiff's color as being Black.

211. At all relevant times that Brentwood Union Free School District and Richard Loeschner knew the Plaintiff's national origin as being American and Belizean-American.

212. At all relevant times that Brentwood Union Free School District and Richard Loeschner knew the Plaintiff's sex as being male.

213. At all relevant times, the Brentwood Union Free School District and Richard Loeschner knew Meredith Foraker's race as being White.

214. At all relevant times, the Brentwood Union Free School District and Richard Loeschner knew Meredith Foraker's color as being White.

215. At all relevant times, the Brentwood Union Free School District and Richard Loeschner knew Meredith Foraker's national origin as being European American.

216. At all relevant times, the Brentwood Union Free School District and Richard Loeschner knew Meredith Foraker's sex as being female.

217. At all relevant times in New York State, the meaning of the word "discrimination" included "separation" and "segregation". See NYSHRL §292(19).

218. At all relevant times in New York State, Human Rights Law stated: "Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared.". See NYSHRL §296(1)(h).

219. At all relevant times in New York State, Human Rights Law stated "The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. Exceptions to and exemptions from the provisions of this article shall be construed

narrowly in order to maximize deterrence of discriminatory conduct." See NYSHRL §300.

220. The District separated the Plaintiff from the interview test opportunity to obtain employment because of race/color when, upon information and belief, a White applicant that scored lower than him on the resume review test was not separated from the same test.

221. The District separated the Plaintiff from the interview test opportunity to obtain employment because of national origin when, upon information and belief, a Non-Belizean American applicant that scored lower than him on the resume review test was not separated from the same test.

222. The District separated the Plaintiff from the interview test opportunity to obtain employment because of sex when, upon information and belief, a female applicant that scored lower than him on the resume review test was not separated from the same test.

223. The District separated the Plaintiff from appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of race/color when, upon information and belief, a White applicant that scored lower than him on the resume review test was appointed to said position.

224. The District separated the Plaintiff from appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of national origin when, upon information and belief, a Non-Belizean American applicant that scored lower than him on the resume review test was appointed to said position.

225. The District separated the Plaintiff from appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because

of sex when, upon information and belief, a female applicant that scored lower than him on the resume review test was not separated from the same test.

226. Richard Loeschner exhibited racial bias against the Black race when he called the president of the Islip Town Branch of the NAACP "arrogant" at a public board meeting for standing up for Black applicants for employment.

227. Richard Loeschner exhibited racial bias against the Black race when he called the Plaintiff process server, who is Black, his "lackey" in front of the Plaintiff in the professional school setting of the Felicio Administration Building.

228. Richard Loeschner exhibited racial bias against the Black race when he stated in an email to the NAACP that a white female applicant for an ENL teacher without initial certification to be an ENL teacher was selected over a Black female application with initial certification because she was "bilingual" when the White female applicant declared that she did not speak a language other than English on her application.

229. Upon information and belief, Richard Loeschner directed Wanda Ortiz-Rivera not to interview the Plaintiff in part because of the Plaintiff's race, color, national origin or sex, or because of any combination of race, color, national origin or sex.

230. Upon information and belief, Richard Loeschner directed Wanda Ortiz-Rivera not to interview the Plaintiff in part because of the Plaintiff's previous complaints about racial discrimination.

231. Upon information and belief, Richard Loeschner directed Wanda Ortiz-Rivera not to interview the Plaintiff in part because of the Plaintiff's previous complaints about color discrimination.

232. Upon information and belief, Richard Loeschner directed Wanda Ortiz-Rivera not to interview the Plaintiff in part because of the Plaintiff's previous complaints about sex discrimination.

233. Upon information and belief, Richard Loeschner directed an administrator not to interview the Plaintiff in part because of the Plaintiff's race, color, national origin or sex, or because of any combination of race, color, national origin or sex.

234. Upon information and belief, Richard Loeschner directed an administrator not to interview the Plaintiff in part because of the Plaintiff's previous complaints about racial discrimination.

235. Upon information and belief, Richard Loeschner directed an administrator not to interview the Plaintiff in part because of the Plaintiff's previous complaints about color discrimination.

236. Upon information and belief, Richard Loeschner directed an administrator not to interview the Plaintiff in part because of the Plaintiff's previous complaints about sex discrimination.

237. William King Moss III is African-American/Black in race and Black in color.

238. Upon information and belief, Eileen Felix is White Hispanic in race and Tanned White in color.

239. Upon information and belief, Cynthia Ciferri is White Non-Hispanic in race and White in color.

240. Upon information and belief, Julia Burgos is White Hispanic in race and Tanned White in color.

241. Upon information and belief, Hassan Ahmed is South Asian in race and Brown in color.

242. Upon information and belief, Brandon Garcia is White Hispanic in race and Tanned White in color.

243. Upon information and belief, Eileen Harmon is White Hispanic in race and White in color.

244. Upon information and belief, Maria Malave is White Hispanic in race and White in color.

245. Upon information and belief, Richard Loeschner is White Non-Hispanic in race and White in color.

246. Upon information and belief, Wanda Ortiz-Rivera is White Hispanic in race and White in color.

247. Upon information and belief, Meredith Foraker is White Non-Hispanic in race and White in color.

248. The Plaintiff is of Belizean and American national origins.

249. Upon information and belief, none of the Defendants are of Belizean national origin.

250. The Plaintiff is a Black male.

251. Upon information and belief, none of the Defendants are Black males.

252. Upon information and belief, the District did not consider any applicant Black/African-American in race for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position beyond their application.

253. Upon information and belief, the District did not consider any applicant Black in color for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position beyond their application.

254. Upon information and belief, the District did not consider any applicant male in sex for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position beyond their application.

255. The Plaintiff was qualified for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position according to the minimum requirements in the posting dated June 28, 2024.

256. Because of the District's past mistreatment of him, his applications and the applications of other Black applicants, the Plaintiff applied for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position without any hope for appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

257. Throughout the selection process for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position, the District did not give the Plaintiff a reason to have hope for appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

258. Throughout the selection process for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position, the Plaintiff did not have any hope for appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

259. The Plaintiff was denied participation in every competitive examination of merit and fitness as far as practicable for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

260. The Plaintiff was not hired for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

261. When Superintendent of Schools, Richard Loeschner engaged in name-calling members of the Black race, color and/or national origin classes in public and professional settings.

262. When Superintendent of Schools, Richard Loeschner engaged in name-calling members of the Black race, color and/or national origin classes and only members of the Black race, color and/or national origin classes in public and professional settings.

263. Concerning Crystal Jackson, Richard Loeschner lied to cover-up a racial advantage in hiring questioned by the NAACP.

264. The NYS Commissioner of Education admonished the Brentwood Union Free School District to comply with school board policy 9240 for not interviewing the Plaintiff, who is Black, in Decision No. 17,602 for the Assistant Superintendent for Bilingual Education and Student Intake.

265. The District preferred a Spanish speaking Department Head of English as a New Language Instruction and Bilingual Content Area Instruction as described in their posting for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

266. Upon information and belief, the District did not competitively examine Meredith Foraker's Spanish speaking ability as far as practicable on or before November 16, 2023.

267. The District did not competitively examine the Plaintiff's Spanish speaking ability as far as practicable on or before November 16, 2023.

268. Upon information and belief, the District employees subscribe to the stereotype that applicants Black/African-American in race or Black in color ("Black applicants") do not speak Spanish.

269. Upon information and belief, the District does not possess a single record of examining the Spanish speaking ability of any of its Black applicants for any position.

270. Upon information and belief, the District does not possess a single record of examining the Spanish speaking ability of Black applicants for any administrative position.

271. Upon information and belief, the District does not possess a single record of examining the Spanish speaking ability of applicants for administrative positions.

272. In the Crystal Jackson case, Richard Loeschner wrote that Crystal Jackson was not hired because the appointed candidate was "bilingual".

273. On her application, the White candidate hired over Crystal Jackson indicated and signed that she did not speak a language other than English.

274. Assessing the Spanish speaking ability of applicants based on appearances, including the words on cover letters, resumes and applications offered in the English language allows for racially prejudicial assessments, assessments based on racial, color-group or national origin stereotypes.

275. The District announced that "Proficiency in oral and written Spanish" was a preferred minimum requirement in its posting for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

276. The District had an inherent duty to examine the Spanish speaking ability of the applicants for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because it announced that "Proficiency in

oral and written Spanish" was a preferred minimum requirement in its posting for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

277. The District failed to examine the Spanish speaking ability of the applicants for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

278. The District failed to examine the Spanish speaking ability of the applicants for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position as far as practicable.

279. The District's failure to examine the Spanish speaking ability of the applicants for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position coupled with the inclusion of Meredith Foraker in and exclusion of the Plaintiff, a bilingual certified applicant, from the competitive examinations of merit and fitness as far as practicable for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position raises inferences of race, color, national origin and sex discrimination by disparate treatment.

280. The District's failure to examine the Spanish speaking ability of the applicants for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position allowed for the operation of protected-class stereotypes and other prejudices such as racial stereotypes and prejudices, color stereotypes and prejudices, national origin stereotypes and prejudices and sex stereotypes and prejudices.

281. Upon information and belief, the District did not select the Plaintiff for advancement in the selection process for the Department Head of English as a New Language Instruction

and Bilingual Content Area Instruction position because of racial prejudice for White applicants.

282. Upon information and belief, the District did not select the Plaintiff for advancement in the selection process for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of racial prejudice against Black applicants.

283. Upon information and belief, the District did not hire the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of racial prejudice for White applicants.

284. Upon information and belief, the District did not hire the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of racial prejudice against Black applicants.

285. Upon information and belief, the District did not select the Plaintiff for advancement in the selection process for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of at least one intentional racial advantage working for White applicants.

286. Upon information and belief, the District did not select the Plaintiff for advancement in the selection process for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of at least one intentional racial disadvantage working against Black applicants.

287. Upon information and belief, the District did not hire the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction

position because of at least one intentional racial advantage working for White applicants.

288. Upon information and belief, the District did not hire the Plaintiff for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because of at least one intentional racial disadvantage working against Black applicants.

289. Evidence of discrimination is rarely overt or announced.

290. Facts that pave a pathway to liability raise a reasonable inference of that liability beyond mere speculation, conjecture, possibility, and conceivability (pontification without true facts).

291. There exists no real legitimate reason pursuant to the job posting that can exempt the District's elevating Meredith Foraker to any interview to the exclusion of the Plaintiff.

292. Set Theory, a field of mathematical logic, is often used to establish prima facie employment discrimination, such as in the seminal "McDonnell Douglas" Supreme Court Decision.

293. It is well established that intentional discrimination need only contribute in part to the employment decision to deem the decision and its accompanying practice(s) to be an unlawful discriminatory practice.

294. The "But for" measure of employment discrimination does not survive constitutional scrutiny for civil service appointments in New York State because any unlawful protected class discrimination necessarily precludes a competitive examination of merit and fitness as far as practicable either because it sullied the accuracy of the examiner voiding at least one examination of merit and fitness or rendered the examination non-competitive for

lack of equal consideration of every applicant. See Article V, Section 6 of the Constitution of the State of New York.

295. Set Theory logically shows that the only reasons that exempt the forces (practices and decisions) within the employer from being unlawfully discriminatory are those related to the protected class.

296. There are only three logical reasons within the protected class that exempt intentional hiring employment discrimination:

A. Members of the protected-class chose not to apply for some reason.

B. Members of the protected-class applied, but they were not the most qualified.

C. Members of the protected-class turned down offers after being named the most qualified candidates/applicants for employment positions.

297. If there are no protected-class reasons/discriminations that resulted in the Plaintiff's not being given employment opportunities and not being hired, then the reasons were reasons/discriminations found within the employer, with said reasons/discriminations being outside of individual qualification because of reason "B".

298. An elimination of all of the protected-class reasons/discriminations gives rise to an inference of intentional discrimination based on protected-class bias because of mathematical logic.

299. If a protected-class did not cause the elimination/rejection then there exists a force within the employer that targeted the protected-class for elimination/rejection.

300. All of the protected-class reasons/discriminations are eliminated in this case because:

A. The Plaintiff is a member of the protected-class of the Black race, Black color, Belizean-American and African-American national origins and male sex and he applied;

B. The Plaintiff is a member of the protected-class of the Black race, Black color, Belizean-American and African-American national origins and male sex and he was similarly situated and more qualified than Meredith Foraker, who is of the White (Non-Hispanic) race, White color, a European-American national origin and female sex; and

C. The Plaintiff was not offered the position.

301. The following circumstances are bits and pieces that formulate a mosaic of evidence of intentional discrimination by separating White persons for special treatment despite their undesired and unacceptable qualifications or lack thereof because of their subpar qualifications were prejudicially super-assessed or prejudicially waived/accepted, and by segregating Black applicants, like the Plaintiff, from employment opportunity and advancement in the competitive selection process because their qualifications were prejudicially malassessed or prejudicially not considered at all.

| **Number** | **"Bits and Pieces" Evidence** |
|---|---|
| 1 | The recruiting and hiring was not based on "individual qualification" and thus violated School Board Policy 9240 because the minimal requirements in the recruitment posting were not tended to or completely adhered to throughout the selection process. |
| 2 | The district did not give equal opportunity to everyone who applied for the position in June/July 2023. |
| 3 | On August 29, 2023, the District posted for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position for a second time. |

| | |
|---|---|
| 4 | The District did not consider or reach out to Mr. Moss who was highly qualified and who had already expressed interest in the position. |
| 5 | Meredith Foraker was not a District resident prior to November 16, 2023. |
| 6 | The District examined Meredith Foraker, herself/her person, for appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position, selected her for appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position and appointed her to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position. |
| 7 | The District did not examine Mr. Moss, himself/his person, for appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position, did not select him for appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position and did not appoint him to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position. |
| 8 | The District's Superintendent of Schools Richard Loeschner has a history of calling Black/African-American persons outside of their name in public and professional settings. |
| 9 | The District has a history of prejudicially malassessing and not assessing the Spanish speaking ability of Black applicants. |
| 10 | The District did not assess the Spanish speaking ability of the Plaintiff. |
| 11 | The Plaintiff was more qualified for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position than Meredith Foraker. The Plaintiff's paper qualifications far exceed those of Meredith Foraker for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position because (1) he supervised high school teachers and students for more years than Meredith Foraker, (2) he completed more credits of study in the field of educational leadership than Meredith Foraker prior to November 16, 2023, (3) he possessed a state-issued credential that substantiated his Spanish speaking ability, a minimally required preferred skill, and Meredith Foraker did not possess any such credential prior to November 16, 2023 |
| 12 | The District did not competitively consider the Plaintiff, though qualified, for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position. |
| 13 | The District did not give the Plaintiff, though qualified, any hope for appointment to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position. |

302. The Plaintiff shows a plausible prima facie case of race, color, national origin and/or sex discrimination by disparate treatment because:

A. He is plausibly a member of protected-classes as a male of the Black/African-American race, who is Black in color and of Belizean national origin.

B. He plausibly applied for the position and was qualified for the position.

C. He plausibly suffered adverse employment action in that, though qualified, (1) he was denied employment opportunity, (2) he was not considered for the position nor given a hope for employment, (3) he was denied participation in a competitive examination of merit and fitness as far as practicable for the position, (4) he was not hired to be the position.

D. A plausible inference of race, color and/or national origin discrimination by disparate treatment can be drawn from the factual allegations that the Plaintiff plausibly suffered adverse employment action because (1) though qualified, he was denied employment opportunity when no qualified Black/African-American male applicants were given employment opportunity in the form of an interview, (2) though qualified, he was deprived of a hope for employment, (3) though qualified, he was denied participation in every competitive examination of merit and fitness as far as practicable for the position when less qualified non-Black applicants were not equally denied, (4) he was not hired to be the position when a less qualified non-Black applicant was hired, (5) Richard Loeschner has only engaged in name-calling toward members of the Black race in public and professional settings, (6) Richard

Loeschner has lied to cover-up a questioned racial advantage in hiring, (7) the Commissioner of Education admonished the Brentwood Union Free School District to comply with school board policy 9240 for not interviewing the Plaintiff, who is Black, in Decision No. 17,602 for the Assistant Superintendent for Bilingual Education and Student Intake, (8) Richard Loeschner did not interview a single qualified Black applicant for an ENL or Bilingual administrative position, but has interviewed White applicants for ENL and Bilingual administrative positions (9) the District subscribed to the stereotypes that Black applicants for ENL/Bilingual positions cannot speak Spanish and White applicants for the same can speak Spanish, even dismissing Black applicants with Bilingual certification such as the Plaintiff, (10) the District subscribes to a principle of "considering internal candidates first" in order to give hiring and promotional advantage to lesser qualified White internal candidates over more qualified Black external candidates, but does not equally give lesser qualified Black applicants an advantage over more qualified external White applicants and (11) the District rejected the Plaintiff and continued to seek applicants with the generally equivalent qualifications as the Plaintiff by reposting for the position on August 29, 2023.

303. The Plaintiff has observed several instances where the District has intentionally circumvented or otherwise violated School Board Policies 9240 and 9110 as well as NY Constitution 5§6 in order to hire unqualified White persons or White persons less qualified than Black applicants.

304. The District has a well documented history of circumventing written policy and established law in order to hire unqualified and less qualified White persons over qualified Black persons including bonafide applicants, such as but not limited to the following:

A. Commissioner of Education found the District to have no reason not to interview the Plaintiff in accordance with Policy 9240 in Decision 17,602.

B. District admittedly hired Vincent Autera by "ripening" a temporary "leave replacement" position into a permanent probationary position, a procedure outlawed in by the Court of Appeals in Matter of Agress v. Bd. of Educ of City of N.Y, 86 A.D.2d 869 (N.Y. App. Div. 1982) affirmed by Matter of Agress v. Board of Education, 57 N.Y.2d 755 (N.Y. 1982).

C. District admittedly hired Wayne Loper by "ripening" a temporary "leave replacement" position into a permanent probationary position, a procedure outlawed in by the Court of Appeals in Matter of Agress v. Bd. of Educ of City of N.Y, 86 A.D.2d 869 (N.Y. App. Div. 1982) affirmed by Matter of Agress v. Board of Education, 57 N.Y.2d 755 (N.Y. 1982).

D. District circumvented hiring Shinkossia Brown and Crystal Jackson, two ENL certified Black applicants, as ENL teachers in order to help Lindsey Lorefice, a White uncertified ENL applicant, to become certified in ENL.

E. Commissioner of Education admonished the District, Board of Education and trustees to ensure that it employs, and pays, only appropriately certified teachers and transmitted a copy of Decision 18,006 and 18,001 to the State

Education Department's Office of Teaching Initiatives for appropriate oversight and monitoring in Decision 18,006.

F.

305. The policy and practice of acting against written policy and law is an identified policy and practice that has directly impacted and lowered the number of qualified Black applicants being hired for certificated positions.

306.

307. A 0% hiring rate for any racial group since the District's 1856 inception demonstrates the District's continued aversion to that group from times of slavery and segregation.

308. Upon information and belief, the District has a 0% rate of hiring Black administrators certified in Bilingual Education.

309. Upon information and belief, the District has a 0% rate of hiring Black ENL supervisors.

310. Upon information and belief, the District has a 0% rate of hiring Black Bilingual Education supervisors.

311. A near 0% hiring rate for any racial group since the District's 1856 inception demonstrates the District's continued aversion to that group from times of slavery and segregation.

312. Upon information and belief, the District has a near 0% rate of hiring school building administrators certified in Bilingual Education because Jose Suarez is the only Bilingual Education certified person ever hired to be a school building administrator.

313. The incredibly low incidence of hiring Bilingual Education certified school building administrators since Jose Suarez became a Bilingual Educator in 1983, shows at least a 40 year time-period where not a single Black bilingual certified educator was hired to be

a school building administrator and only one Bilingual certified educator was hired to be a school building administrator. See Exhibit J - NYSED Certifications of Jose Suarez.

314. The discriminatory forces in the District against the Plaintiff's Black race/color and his Hispanic-affiliated Bilingual-Spanish qualification formed an intersectionality of racial and ethnic animuses and caused the subsequent disparate treatment.

315. The policy and practice of intentionally not hiring bilingual certified school administrators when more than 7,500 of the District's approximately 18,500 students are English Language Learners, raises an inference of racial discrimination against racial minorities because racial minorities, people who are not "White Non-Hispanic", like the Plaintiff, are more likely to be bilingual certified.

316. Inaccurate assessments and subjective conclusions resulting from stereotypes against Black people detract from a Black applicant's knowledge, skills, abilities, certifications and qualifications and thereby harm, damage and violate their civil right to employment opportunity without discrimination because of race, color and/or national origin.

317. Upon information and belief, the district operated upon subjective conclusions made by the Superintendent of Schools resulting from negative stereotypes against Black people when he directed an administrator or secretary not to interview the Plaintiff.

318. Intentionally discriminating against Blacks and for Whites by disparate treatment damages and violates the Black applicant's civil right to employment opportunity without discrimination because of race, color and/or national origin bias.

**Related Solely to Retaliation Because of Plaintiff's Complaints and Testimony Supporting Complaints of Race and Color Discrimination, an Improper Governmental Action.**

319. On July 25, 2023, Karen Avila petitioned the Islip Town Branch of the National Association for the Advancement of Colored People ("Islip-Smithtown Branch") for assistance concerning an alleged discriminatory circumstance that occurred between her and her supervisor, the principal of Gail Elaine Kirkham Northeast Elementary School, Rosamaria Cortese.

320. At all relevant times, the Plaintiff was the president of the Islip-Smithtown Branch.

321. On July 26, 2023, the Plaintiff penned a letter dated July 26, 2023 to the Brentwood Board of Education, the superintendent and the interim superintendent-elect explaining the alleged discriminatory incident and why it was allegedly discriminatory.

322. On July 27, 2023, the Plaintiff emailed the letter to the Board President Eileen Felix, to the Superintendent Richard Loeschner, and to the Interim-Superintendent-Elect Wanda Ortiz-Rivera. See Exhibit I - Emailed Letter of Support of Karen Avila's Complaint of Discrimination and Retaliation.

323. Upon information and belief, at least one of the agents of the Brentwood Union Free School District decided not to competitively examine the Plaintiff's merit and fitness as far as practicable from July 27, 2023 to August 29, 2023.

324. Upon information and belief, at least one of the agents of the Brentwood Union Free School District decided not to competitively examine the Plaintiff's merit and fitness as far as practicable from July 27, 2023 to August 29, 2023, wholly or in part, because the Plaintiff supported a complaint alleging racial discrimination.

325. On August 29, 2023, the Defendant District, Board and Superintendent reposted for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

326. Upon information and belief, the Defendant District, Board and Superintendent reposted for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position, wholly or in part, because the Plaintiff supported a complaint alleging racial discrimination.

327. The temporal proximity of Plaintiff's last support of a complaint of racial discrimination filed prior to August 29, 2023 (July 27, 2023 to August 29, 2023) is exactly thirty-four (34) days.

328. Pursuant to §1988, the Plaintiff additionally shows a plausible prima facie case of retaliatory discrimination pursuant to NYSHRL §296(1)(e), (1)(h), and (7), participation in retaliatory discrimination or attempting to participate in retaliatory discrimination pursuant to NYSHRL §296(6), and retaliation pursuant to NYSCSL §75-b and NYSLL §740, because:

A. The Plaintiff plausibly engaged in the protected activity of supporting a complaint alleging racial discrimination on July 26, 2023 (against the District's agent) and emailing the support letter on July 27, 2023.

B. The Plaintiff plausibly suffered an adverse employment action in the termination of his candidacy and the rejection of his application and person for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

C. The Plaintiff plausibly showed a causal connection between the protected activity and the adverse employment action by the "very close" temporal proximity of less than 1 month in the making of a decision to deny the Plaintiff employment opportunity and other rights.

**Related to Contract Law**

329. The District intentionally posted publicly for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

330. The District considered advertising and accepting applications from the registrants on OLAS, including the Plaintiff, for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

331. The District, in its June 28, 2023 posting invited interested applicants to submit a cover letter and resume.

332. The Plaintiff was an interested applicant and submitted his cover letter and resume via OLAS on July 4, 2023.

333. Brentwood Union Free School District plausibly made an offer of employment opportunity for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position to the registrants on OLAS by publishing its posting on OLAS and inviting interested applicants to submit a cover letter and resume via OLAS.

334. The Plaintiff read and considered the posting's minimal requirements necessary to be a qualified candidate before applying for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

335. The Plaintiff read and considered the posting's additional requirements necessary to be a qualified candidate before applying for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

336. The Plaintiff read and considered the posting's statement that "The Brentwood School District adheres to Federal Laws in employment practices prohibiting discrimination on

the basis of race, creed, color, national origin, handicap, sex, age, marital status or sexual preference."

337. The Plaintiff considered the requirements and guarantees in the posting before applying on OLAS.

338. William King Moss III accepted the District's public offer of employment opportunity for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position by applying for the position.

339. Brentwood Union Free School District and the Plaintiff plausibly both ascended because Brentwood Union Free School District made a public offer of employment opportunity by posting the position and its requirements and William King Moss III accepted by applying for the position.

340. When an employer posts minimal requirements for an employment position, that employer intends to be bound to those minimal requirements unless the employer plans to execute a fraudulent hiring process.

341. When an employer posts additional requirements for an employment position, that employer intends to be bound to those additional requirements unless the employer plans to execute a fraudulent hiring process.

342. When an employer posts rules for the selection process for an employment position, that employer intends to be bound to those rules unless the employer plans to execute a fraudulent hiring process.

343. The Plaintiff intended to be bound to the minimal requirements, additional requirements and rules for the selection process until being terminated according to a competitive examination of merit and fitness as far as practicable, voluntarily terminated by the

Plaintiff's resignation, or appointed to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

344. The Plaintiff agreed and intended to be bound to an employment opportunity relationship with the District under the published conditions and the required constitutional selection process.

345. Brentwood Union Free School District agreed and intended to be bound to an employment opportunity relationship with the applicants responding to the posting for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position under the published conditions and the required constitutional selection process.

346. The Plaintiff additionally shows a plausible prima facie case of an unwritten Hiring/Employment Opportunity/Selection Process Contract with the Brentwood Union Free School District when:

A. Brentwood Union Free School District plausibly considered advertising and accepting applications from the registrants, including the Plaintiff, for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position on OLAS, and

B. Brentwood Union Free School District plausibly made an offer of employment opportunity for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position to the registrants on OLAS by publishing its posting on OLAS, and

C. The Plaintiff plausibly considered the requirements and guarantees in the posting before applying on OLAS, and

D. Brentwood Union Free School District and the Plaintiff plausibly both ascended because Brentwood Union Free School District made a public offer of employment opportunity by posting the position and its requirements and William King Moss III accepted by applying for the position.

E. Both Brentwood Union Free School District and the Plaintiff plausibly reasonably agreed and intended to be bound to an employment opportunity relationship with published conditions and essential terms and a selection process that fairly manages the employment opportunity in good faith and as prescribed by written policies.

**Related to Breach of Duty**

347. Upon information and belief, all of the Defendant officers and employees took oaths of office to support the Constitution of the State of New York and the Constitution of the United States.

348. The District, including its agents, did not maintain any record of the Plaintiff's rejection so that said rejection is capable of being reviewed

349. The elements of professional malpractice and breach of duty are as follows:

A. Existence of a legal duty

B. Breach of that duty

C. Causal connection between the breach and injury

D. Measurable harm from the injury

350. The Plaintiff can show a prima facie case of professional malpractice and breach of duty are as follows:

A. The defendants all had a legal duty to hire according to a competitive examination of merit and fitness as far as practicable in order to support the Constitution of the State of New York.

B. The defendants did not appoint the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction according to a competitive examination of merit and fitness as far as practicable, a breach of their duty to do so.

C. The defendants not appointing the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction according to a competitive examination of merit and fitness as far as practicable directly caused the following damages to the Plaintiff: (i) his constitutional right civil right to a competitive examination of merit and fitness as far as practicable, (ii) liberty right to consideration and a hope for appointment, (iii) due process rights to a noticed hearing before his liberty right to consideration and a hope for employment were stripped, (iv) equal protection rights pertaining to School Board Policies 0100, 9240 and 9110 , and his equal opportunity rights to employment without race, color, national origin or sex bias.

D. The Plaintiff suffered measurable harm in the forms of back pay, mental anguish, emotional distress, sleepless nights, marital issues, sexual performance issues, suicidal ideation, and stress related medical conditions such as high blood pressure and high blood sugar.

351. Punitive damages serve as a deterrent from inconsistent hiring practices that damage the equal employment opportunity rights of the citizenry.

352. Compensatory damages serve to make up for the financial losses incurred as a result of the biased selection process.

353. As a result of the Defendants actions and inactions, the Plaintiff suffers from mental anguish, emotional distress, sleepless nights, marital issues, sexual performance issues, suicidal ideation, and stress related medical conditions such as high blood pressure and high blood sugar.

354. In all of the aforementioned allegations and those hereafter, because Mr. Moss is a pro se litigant, the Court has an obligation to construe his papers liberally to raise their strongest arguments.

**CAUSES OF ACTION**

355. Each and every Cause of Action stated reiterates and includes the allegations set forth in Paragraphs 1 through ???.

356. Each and every Cause of Action stated reiterates and includes the allegations set forth in every other Cause of Action.

357. For each and every Cause of Action the Plaintiff reiterates and alleges that the employer took adverse action against the Plaintiff at least in part for a discriminatory or retaliatory reason.

**CAUSES OF ACTION ONLY FOR PROTECTED-CLASS DISCRIMINATION AND RETALIATION BECAUSE OF A DISCRIMINATION COMPLAINT CLAIMS**

**Upon claims of race, color and/or sex discrimination as well as retaliation because of complaints of race, color and/or sex discrimination only.**

**FIRST CAUSE OF ACTION AND CLAIM FOR RELIEF**

**DEPRIVATION OF EQUAL OPPORTUNITY, FAILURE TO HIRE AND TEST SCORE RESULT ALTERATION ON THE BASIS OF A RACE, COLOR, NATIONAL ORIGIN AND SEX, OR ANY COMBINATION THEREOF AND RETALIATION**

**In Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")**

358. Pursuant to Title VII, this is an action for declaratory judgment, injunctive judgment, and other judgments as the Court may deem just and proper because of the Defendants' violating, negligence in enforcing, blacklisting to violate, conspiracy to violate, participation in violating Title VII, or, to the extent there was no primary violation pursuant to Title VII, attempting to participate in violating Title VII.

359. Because the Plaintiff, a Black applicant, was denied opportunity and competitive consideration in the selection process and a White (Hispanic or non-Hispanic) applicant with lesser relevant credentials was given opportunity and consideration in the selection process for Department Head of English as a New Language Instruction and Bilingual Content Area Instruction, the Defendants violated the Plaintiff's civil and human rights as prescribed by Title VII.

360. Upon information and belief, the Defendants barred the Plaintiff from employment because of his race, color, national origin and/or sex.

361. Upon information and belief, the Defendants deprived the Plaintiff of employment opportunities because of his race, color, national origin and/or sex.

362. Upon information and belief, the Defendants altered test score results, including but not limited to rankings for selection to interview, because of his race, color, national origin and/or sex.

363. Upon information and belief, the Defendants retaliated against the Plaintiff because he filed support for Karen Avila's complaint of racial discrimination on July 27, 2023.

364. July 2023 to August 2023 is the same time period of the Plaintiff's testimonial support of Karen Avila's discrimination complaint and the decisions made to reject the Plaintiff.

365. The Defendant District, Board of Education and Richard Loeschner created a hostile work environment for the Plaintiff's application because they failed to protect the Plaintiff from retaliation because of his advocacy against racial discrimination.

366. The Defendant District, Board of Education and Richard Loeschner created a hostile work environment for the Plaintiff's application because they failed to protect the Plaintiff from retaliation because of his previous complaints against racial discrimination.

367. The Defendant District, Board of Education and Richard Loeschner created a hostile work environment for the Plaintiff's application because they failed to protect the Plaintiff against their depicting him as an uppity negro/uppity nigger before the Division of Human Rights in February 2021 because calling a Black person arrogant for standing up for their rights raises the uppity negro/uppity nigger connotation. See Exhibit K - February 12, 2021 NYSDHR Response.

368. The Defendant District, Board of Education and Richard Loeschner created a hostile work environment for the Plaintiff's application by allowing Richard Loeschner to insult the Plaintiff for his advocacy against racial discrimination publicly at Board of Education meetings by calling him "arrogant" and his questions "ridiculous" without reprimand.

369. Richard Loeschner never called any White person "arrogant" publicly for their public advocacy and never called any White person's questions "ridiculous" at a public board meeting.

370. The superintendent's Board-sanctioned public floggings of the Plaintiff for exercising protected activity created a hostile working environment for his applications for administrative positions in the district because the public, including decision making employees and trustees, were aware of the superintendent's discriminatory and retaliatory animus against the Plaintiff. See Exhibit L - Email Thread Regarding "Arrogant" Insult.

371. The Plaintiff alleges one count of failure to hire/refusal to hire in violation of 42 U.S. Code §2000e-2(a)(1).

372. The Plaintiff alleges one count of deprivation of employment opportunity in violation of 42 U.S. Code §2000e-2(a)(2).

373. The Plaintiff alleges one count of adjustment of test score results in violation of 42 U.S. Code §2000e-2(L).

374. The Plaintiff alleges one count of retaliation in violation of 42 U.S. Code §2000e-3(a).

375. Therefore, the Plaintiff is a victim of Title VII violations committed by the Defendants and owed relief in the forms of (1) equitable relief such as hiring and tenure, (2) $300,000 in punitive and compensatory damages, (3) any additional amount for back pay and front pay, (4) costs of litigation and (5) any other relief to be determined at trial against the District, its Board of Education, and each of its officers and employees, including volunteer employees, responsible for any Title VII violation.

376. The aforementioned remedies are appropriate in furtherance of the purpose of the Title VII and the US Constitution and are needed to assure their effectiveness.

**SECOND CAUSE OF ACTION AND CLAIM FOR RELIEF**

**FAILURE TO CONTRACT/HIRE ON THE BASIS OF RACE**

**In Violation of Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981") under 42 U.S.C. §1983 ("Section 1983")**

377. Pursuant to Section 1981 under Section 1983, the Plaintiff's cause of action is a tortious breach of duty by way of committing a crime against the Plaintiff in the line of duty by excluding him from public employment by reason of race, color and/or national origin prejudices, prejudgements, misjudgements and disparate treatment in the assessment of required and preferred qualifications against the Plaintiff, a Black applicant, and corruptly for and in favor of non-Black applicants.

378. The Defendants' behavior towards Black/African-American applicants changes when applicants are White because the District promotes lesser qualified White internal applicants over highly qualified external Black applicants but does not promote lesser qualified internal Black applicants over highly qualified external White applicants.

379. The Defendants' behavior towards Black/African-American applicants changes when applicants are White because the District interviews White applicants, but does not interview the highest rated Black applicants.

380. Therefore, the Plaintiff is a victim of tortious breach of duty and owed relief in the forms of $300,000 punitive damages and an additional amount for lost employment opportunity, lost wages, and pain and suffering to be determined at trial against the District and each of its officers and employees responsible for the breach.

381. The aforementioned remedies are appropriate in furtherance of the purpose of the §1981 and §1983 and the US Constitution and are needed to assure its effectiveness.

**THIRD CAUSE OF ACTION AND CLAIM FOR RELIEF**

## FAILURE TO PROVIDE EQUAL OPPORTUNITY AND FAILURE TO HIRE ON THE BASIS OF RACE, COLOR, NATIONAL ORIGIN AND SEX, OR ANY COMBINATION THEREOF

### In Violation of the Equal Protections Clause of the Fourteenth Amendment of the Constitution of the United States of America ("Fourteenth Amendment") under 42 U.S.C. §1983 ("Section 1983")

382. Pursuant to the Fourteenth Amendment under Section 1983, the Plaintiff's cause of action is a tortious breach of duty by way of committing a crime against the Plaintiff in the line of duty by excluding him from public employment by reason of race, color and/or national origin prejudices, prejudgements, misjudgements and disparate treatment in the assessment of required and preferred qualifications against the Plaintiff, a Black applicant, and corruptly for and in favor of non-Black applicants.

383. The Defendants' behavior towards Black/African-American applicants changes when applicants are White because the District promotes lesser qualified White internal applicants over highly qualified external Black applicants but does not promote lesser qualified internal Black applicants over highly qualified external White applicants.

384. The Defendants' behavior towards Black/African-American applicants changes when applicants are White because the District interviews White applicants, but does not interview the highest rated Black applicants.

385. Therefore, the Plaintiff is a victim of tortious breach of duty and owed relief in the forms of $300,000 punitive damages and an additional amount for lost employment opportunity, lost wages, and pain and suffering to be determined at trial against the District and each of its officers and employees responsible for the breach.

386. The aforementioned remedies are appropriate in furtherance of the purpose of the Fourteenth Amendment and §1983 and the US Constitution and are needed to assure its effectiveness.

**FOURTH CAUSE OF ACTION AND CLAIM FOR RELIEF**

**FAILURE TO PROVIDE EQUAL OPPORTUNITY AND FAILURE TO HIRE ON THE BASIS OF A RACE, COLOR, NATIONAL ORIGIN AND SEX, OR ANY COMBINATION THEREOF**

**In Violation of Title VI of the Civil Rights Act of 1964 ("Title VI")**

387. Pursuant to Title VI, this is an action for declaratory judgment, injunctive judgment, and other judgments as the Court may deem just and proper because of the Defendants' violating, negligence in enforcing, blacklisting to violate, conspiracy to violate, participation in violating Title VI, or, to the extent there was no primary violation pursuant to Title VI, attempting to participate in violatingTitle VI.

388. At all relevant times, Brentwood Union Free School Districts received federal funding.

389. Therefore, the Plaintiff is a victim of Title VI violations and owed relief in the forms of $300,000 punitive damages and an additional amount for lost employment opportunity, lost wages, and pain and suffering to be determined at trial against the District and each of its officers and employees responsible for the breach.

390. The aforementioned remedies are appropriate in furtherance of the purpose of the Title VI and the US Constitution and are needed to assure its effectiveness.

**<u>CAUSES OF ACTION *NOT SOLELY* FOR PROTECTED-CLASS DISCRIMINATION AND RETALIATION BECAUSE OF DISCRIMINATION COMPLAINT CLAIMS</u>**

**Upon claims that are not only of race, color and/or sex discrimination as well as retaliation because of complaints of race, color and/or sex discrimination, but *may also* include those claims.**

## FIFTH CAUSE OF ACTION AND CLAIM FOR RELIEF

## CURTAILMENTS OF AND RETALIATION FOR FREEDOM OF SPEECH

## In Violation of the First Amendment of the Constitution of the United States of America ("First Amendment") under 42 U.S.C. §1983 ("Section 1983")

391. Pursuant to the First Amendment, this is an action for declaratory judgment, injunctive judgment, and other judgments as the Court may deem proper because of the Defendants' negligence in enforcing and active participation in violating, conspiracy to violate or aiding the violation of the First Amendment by in the form of denying the Plaintiff to his rights to expressive freedom of speech in a hiring employment context and speech free from retaliation because of previous filings or support of discrimination complaints.

392. The District did not allow the Plaintiff to speak to the District in support of his application when his placement in the screening round entitled him to said speech.

393. Upon information and belief, the District denied the Plaintiff of his right to speech free from retaliation because of previous filings or support of discrimination complaints when the District rejected him from the interview round after he submitted a letter supporting a complaint of discrimination.

394. A remedy of injunctive relief ending biased hiring practices, $300,000 in punitive damages, and compensatory damages to be determined at trial are reasonable and requested by the Plaintiff for the constitutional violations herein.

395. Therefore, the aforementioned remedies are appropriate in furtherance of the purpose of the Article 1§11 (First Sentence) of the Constitution of the State of New York and are needed to assure its effectiveness.

396. The aforementioned remedies are appropriate in furtherance of the purpose of the First Amendment and the US Constitution and are needed to assure its effectiveness.

## SIXTH CAUSE OF ACTION AND CLAIM FOR RELIEF

## UNLAWFUL DEPRIVATION OF LIBERTY

**In Violation of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States of America ("Fourteenth Amendment") under 42 U.S.C. §1983 ("Section 1983")**

397. Pursuant to the Fourteenth Amendment under Section 1983, the Plaintiff's cause of action for unlawful deprivation of liberty in the form of denying him access to competitive examinations of merit and fitness as far as practicable and the determination of a civil service appointment according to his and other applicants' individual qualifications only.

398. At all relevant times, School Board Policy 9240 required that District residents with equivalent qualifications as other candidates will be appointed over the other candidates.

399. The Constitution of the State of New York 5§6 establishes this rule and as an inalienable right for District residents in the hiring context.

400. Upon information and belief, the Plaintiff's and Meredith Foraker's qualifications were assessed by Betty Greene, a consultant appointed by the Board of Education to make such assessments.

401. Upon information and belief, the Plaintiff's qualifications exceeded those of Meredith Foraker for the position of Department Head of English as a New Language Instruction and Bilingual Content Area Instruction according to Betty Greene's scoring.

402. Because the Plaintiff's assessment of qualifications exceeded those of Meredith Foraker, the Plaintiff, as a resident, should have been hired to be the position over or before Meredith Foraker.

403. Therefore, the Plaintiff is a victim of an unlawful deprivation of liberty and owed relief in the forms of $300,000 punitive damages and an additional amount for lost employment opportunity, lost wages, and pain and suffering to be determined at trial against the District and each of its officers and employees responsible for the breach.

404. The aforementioned remedies are appropriate in furtherance of the purpose of the Fourteenth Amendment and §1983 and the US Constitution and are needed to assure its effectiveness.

**SEVENTH CAUSE OF ACTION AND CLAIM FOR RELIEF**

**CONSPIRACY**

**In Violation of the 42 U.S.C. §1985 ("Section 1985")**

405. Pursuant to Section 1985, the Plaintiff's cause of action for unlawful deprivation of liberty in the form of denying him access to competitive examinations of merit and fitness as far as practicable and the determination of a civil service appointment according to his and other applicants' individual qualifications only.

406. Upon information and belief, Richard Loeschner and Wanda Ortiz-Rivera agreed to repost the Department Head position to avoid the Plaintiff's candidacy.

407. Richard Loeschner and the District have a history of reposting positions after the application of a highly qualified Black/African-American person applies.

408. Upon information and belief, Richard Loeschner postselected/preselected Meredith Foraker to be the Department Head.

409. Upon information and belief, Meredith Foraker agreed to be postselected/preselected to be the Department Head.

410. Meredith Foraker and Richard Loeschner are of sound mind and knew that deciding to make a particular person a Department Head outside of the selection process makes the selection process a farce and denies all applicants of a true opportunity to obtain the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

411. It is impossible to achieve an appointment in public education unless the Superintendent of Schools and the appointee agree to the appointment.

412. Meredith Foraker and Wanda Ortiz-Rivera agreed to the appointment of Meredith Foraker to the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position, thereby consenting to every act that led to it.

413. Therefore, the Plaintiff is a victim of an unlawful deprivation of liberty and owed relief in the forms of $300,000 punitive damages and an additional amount for lost employment opportunity, lost wages, and pain and suffering to be determined at trial against the District and each of its officers and employees responsible for the breach.

414. The aforementioned remedies are appropriate in furtherance of the purpose of the Section 1985 and the US Constitution and are needed to assure its effectiveness.

**EIGHTH CAUSE OF ACTION AND CLAIM FOR RELIEF**

**Neglect to Prevent Conspiracy**

**In Violation of the 42 U.S.C. §1986 ("Section 1986")**

415. Pursuant to Section §1985 and §1986, the Plaintiff's cause of action for negligence in preventing conspiracy to commit (1) unlawful deprivation of liberty in the form of denying him access to competitive examinations of merit and fitness as far as practicable, (2) unlawful deprivation of the determination of a civil service appointment according to his and other applicants' individual qualifications only, (3) race, color, national origin and sex discrimination by disparate/substandard treatment, and (4) retaliation because of previously filed complaints against unlawful discrimination.

416. Each and every board of education trustee has received ample notice of the disparate/substandard treatment of Black applicants in the Brentwood Union Free School District.

417. Having received such notice, no Defendant trustee has publicly moved to (1) audit the human resources office, (2) audit any particular recruitment or hiring process, (3) require Board approval of hiring examinations, (4) train supervisors and examiners, or conduct any other public oversight or procedural improvement that would prevent hiring corruption and particularly protected-class discrimination and retaliation.

418. None of the Defendant trustees acted in their official capacity to directly stop or oversee the hiring process for certificated personnel since February 2018.

419. Richard Loeschner had knowledge of the wrongs conspired to be done because he was committing them.

420. Richard Losechner had the power to prevent the commission of his own wrongful acts.

421. Richard Loeschner did not prevent himself from committing hiring corruption, especially committing race, color, national origin and sex based discrimination and retaliation.

422. Therefore, the Plaintiff is a victim of an unlawful deprivation of liberty and owed relief in the forms of $300,000 punitive damages and an additional amount for lost employment opportunity, lost wages, and pain and suffering to be determined at trial against the District and each of its officers and employees responsible for the breach.

423. The aforementioned remedies are appropriate in furtherance of the purpose of the Section 1986 and the US Constitution and are needed to assure its effectiveness.

## SUMMARY OF CAUSES OF ACTION

424. In summary, this is an action for declaratory judgment, injunctive judgment, compensatory judgment and other judgments because of the Defendants' negligence in enforcing and/or active participation in and/or aiding in the violations of the Plaintiff's civil rights (as enumerated by violations of law), personal rights (in the effects to his physical, mental and emotional health and well-being) and property rights (in holding personal money and in the tax-dollars spent on the fraudulent Assistant Superintendent salaries).

## AMOUNT IN CONTROVERSY

425. The amount in controversy, the amount the plaintiff claims the defendant owes or the amount at stake is, but is not limited to, ten million ($10,000,000) in punitive damages and additional compensatory and other damages, costs, and the like to be determined at trial because the Plaintiff incurred personal rights damages in the following forms: mental anguish, emotional distress, personal injury to his mental and physical health, lost opportunity, lost wages, lost benefits, lost potential savings in fuel costs, lost time due to

preparations for this proceeding, lost reduction of commuter travel time, loss of personal money, sleepless nights and other damages for injuries as the Court may deem just and proper.

**RELIEF SOUGHT**

426. Relief is sought for violations of the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991, ("Section 1981") under 42 U.S.C. §1983 ("Section 1983"); the First and Fourteenth Amendments under 42 U.S.C. §1983 ("Section 1983"); 42 U.S.C. §1985 ("Section 1985"), 42 U.S.C. §1986 ("Section 1986"), Title VI, Title VII and all of the relevant federal tortious acts.

427. Relief in the form of Compensatory Damages for numerous violations of law, the aiding of such violations, and conspiracy to commit such violations resulting in an amount to be determined at trial, emotional distress, mental anguish, marital problems and personal injuries resulting in an amount to be determined at trial; court/proceeding fees and costs, attorneys' and consultants' fees and costs, as enumerated herein and any other such and further relief as the Court may deem just and proper.

428. Relief in the form of $300,000 in Punitive and Compensatory Damages for each violation of law, the aiding of such violations, and conspiracy to commit such violations, and such other actions as the Court may deem just and proper.

429. Relief in the form of Restitution for opportunity, compensation and benefits lost to the Plaintiff or gained by Respondent Meredith Foraker, and such other restitutions as the Court may deem just and proper.

430. Relief in the form of Coercive & Provisional Remedies, namely injunctive orders backed by contempt powers, for protection against the granting of tenure by recommendation of

the Superintendent of Schools and subsequent vote of the Board of Education and protection against the granting of tenure by Estoppel for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position at issue in this complaint until the end of this dispute, and such other injunctive relief as the Court may deem just and proper.

431. Relief from Employment Discrimination in the form of directing the Defendants to hire and promote by giving all citizens equal employment opportunity and by appointing employees according to a competitive examination of fitness based on merit.

432. Relief for Employment Discrimination in the form of directing the Defendants to compensate the Plaintiff for damages associated with numerous violations of employment discrimination law, the aiding of such violations, and conspiracy to commit such violations resulting in an amount to be determined at trial, court/proceeding fees and costs, attorneys' and consultants' fees and costs, and such other and further relief as the Court may deem just and proper.

433. Relief from Fraudulent and Inaccurate Hiring Practices and from District payments to the salaries of subsequent fraudulent employment contracts in the form of a Court order.

434. Relief in the form of the Court vacating the District's appointment of Ms. Meredith Foraker from the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position.

435. Relief in the form of restitution or a reimbursement of funds from Richard Loeschner and Wanda Ortiz-Rivera for the unconstitutional payment of district funds to Meredith Foraker for her employment in the position of Department Head of English as a New Language Instruction and Bilingual Content Area Instruction from the time of

appointment to the time of the judgement, including any and all expenses incurred because of said unconstitutional payment, such as the salary of Meredith Foraker, the salary of the administrator who replaced Meredith Foraker, the difference between hiring Meredith Foraker's salary and the salary of the department head hired from outside the district closest in time to Meredith Foraker and any other expense.

**APPENDICES AS EXHIBITS**

436. Attached hereto as Appendices as Exhibits are copies of relevant documents in support of Plaintiff's case, including the Response issued by Defendant District that has a bearing on this case and/or of which Plaintiff herein complains. Marked with a cover sheet or electronically as Exhibits:

A. November 16, 2023 Board of Education Minutes

B. April 5, 2024 Email Thread

C. September 9, 2024 EEOC Email Thread and Charge

D. April 29, 2025 Right to Sue Letter

E. First Job Posting for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position

F. Proof of Moss Application on OLAS

G. Application Rubric for Secondary Assistant Principal

H. Second Job Posting for the Department Head of English as a New Language Instruction and Bilingual Content Area Instruction position

I. Emailed Letter of Support of Karen Avila's Complaint of Discrimination and Retaliation

J. NYSED Certifications of Jose Suarez

K. February 12, 2021 NYSDHR Response

L. Email Thread Regarding "Arrogant" Insult

CLOSING

437. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Wherefore, Plaintiff demands judgment on all of the causes of action herein by jury and any and all relief owed to Plaintiff as to this Court may seem just and proper.

Dated: July 25, 2025

Brentwood, New York

Respectfully submitted,

William King Moss III
32 S. 5th Ave
Brentwood, NY 11717
631-245-3957
williamkmoss3@gmail.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X
WILLIAM KING MOSS III,

Plaintiff,

-- against --

THE BOARD OF EDUCATION OF THE BRENTWOOD UNION FREE SCHOOL DISTRICT, BRENTWOOD UNION FREE SCHOOL DISTRICT, AND BOTH INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, EILEEN FELIX, CYNTHIA CIFERRI, JULIA BURGOS, HASSAN AHMED, MARIA MALAVE, BRANDON GARCIA, EILEEN HARMON, RICHARD LOESCHNER, WANDA ORTIZ-RIVERA AND MEREDITH FORAKER,

Defendants.
---------------------------------------------------------------------X

Docket No.: ___________

**VERIFICATION OF COMPLAINT**

**Jury Trial Demanded**

William King Moss III, being duly sworn, deposes and says that he is the above-referenced Plaintiff; deponent has read the foregoing Complaint and is familiar with its contents; the same is true to deponent's knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters deponent believes it to be true.

William King Moss III, Plaintiff

Sworn to before me on this 25th

day of June 2025.

NOTARY PUBLIC

BHADRESH ACHARYA
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01AC5002965
QUALIFIED IN SUFFOLK COUNTY
MY COMMISSION EXPIRES OCTOBER 13 2026